UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:

JEFFREY S. CARMAN
GLENDA CARMAN,

    Debtors

CASE NO. 19-14906-jps
CHAPTER 13

JUDGE JESSICA PRICE SMITH

CREDITOR US BANK NATIONAL ASSOCIATION A TRUSTEE'S OBJECTION TO DEBTORS' OBJECTION TO AMENDED PROOF OF CLAIM 3-1 (DOC. #35)

    Creditor US Bank National Association as Trustee for Adjustable Rate Mortgage Trust 2005-5 Mortgage Backed Pass-Through Certificates, Series 2005-5 ("Creditor") by and through counsel hereby objects to Debtors Jeffrey and Glenda Carman's ("Debtors") Objection to Amended Proof of Claim (Claim No. 3-1; Doc. #35).

    Debtors' objected to the total secured claim in the amount of $113,402.68 and the total pre-petition arrearage claim in the amount of $7,841.33. Creditor submits that the Debtors' objections have no basis and should be overruled.

<u>The Total Secured Claim In The Amount Of $113,402.68</u>

    In support of this objection Creditor states that Debtors executed A Promissory Note on February 28, 2005. The Promissory Note was secured by a Mortgage that encumbers Debtors premises located at 2113 Harrison Avenue, Sheffield Township, Ohio 44055. The Promissory Note has been indorsed in blank and the Mortgage has been assigned to Creditor.

There was a prior default in payment by Debtors that was resolved through a Home Affordable Modification Agreement ("Modification Agreement"), a copy of which is attached hereto as Exhibit A. The Modification Agreement became effective on August 1, 2016. The new principal balance in accordance with the Modification Agreement was $109,264.19. $51,314.19 of the new principal balance was a Deferred Principal Balance, which accrued no interest. Further, no payments on the Deferred Principal Balance were required. There is a provision in the Modification Agreement that could result in the forgiveness of the Deferred Principal Balance if certain conditions are met. Debtors argue in their objection that a portion of the Deferred Principal Balance, specifically the sum of $34,209.48, should have been forgiven. This, in turn, would reduce the Deferred Principal Balance to $17,104.73.

However, Creditor submits the conditions to forgive the Deferred Principal Balance have not been met. The relevant portion of the Modification Agreement states:

> **Provided I am not in default on my new payments such that the equivalent of there full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 05/01/2016, the Lender shall reduce the Deferred Principal Balance of my Note installments equal to one-third of the Deferred Principal reduction amount.**

Creditor argues that based on the payment history in Form 410A attached to the Amended Proof of Claim, Debtors made a contractual payment in accordance with the terms of the Modification Agreement on October 23, 2016 that was applied to the August 2016 payment due date. No further contractual payments were received from the Debtors until February 2017. Therefore, on the last day of January 2017 the Debtors had three full monthly payments that were due and unpaid. This constitutes a breach of the Modification Agreement and the Deferred Principal Balance forgiveness was nullified. Consequently, there is no sum that is to be forgiven and the total secured claim in the amount of $113,402.68 as set forth in the Amended Proof of Claim is correct.

The Total Pre-Petition Arrearage Claim In The Amount Of $7,841.33

Debtors argue that two sums should be deducted from Creditor's pre-petition arrearage of $7,841.33. The first item that Debtors argue should be deducted is the sum of $2,751.53. In support of this allegation, Debtors point to Creditor's Off-Scheduled Escrow Statement dated August 12, 2019 (See attached Exhibit B) which reflects an escrow surplus in the amount of $2,751.53. Debtors claim the escrow surplus should be deducted because it is a surplus. However, in making this argument Debtors failed to state that in the Off-Scheduled Escrow Statement there is language to indicate that the $2,751.53 escrow surplus is a *projection* as if the Debtors had been making monthly mortgage payments that would result in the loan being contractually current. It is not an actual surplus. Therefore, the sum of $2,751.53 should not be deducted from the pre-petition arrearage because this sum was never paid by the Debtors.

The Debtors also state that the sum of $765.43 should be removed from the pre-petition arrearage. The Debtors call this sum an "incorrect shortage," but provide no explanation why they believe it is incorrect. Creditor submits that the bankruptcy was filed on August 9, 2019. The payment history in Form 410A attached to the Amended Proof of Claim Form reflects a $0.00 escrow balance and an amount due for funds advanced by the Creditor on the Debtors' behalf in the amount of of $765.43. The basis for the negative escrow balance of $765.43 is detailed in Columns J and O of the 410A. Debtors have submitted no evidence to suggest why they feel the information contained in Column O is not accurate. Further, Creditor's required escrow cushion is $1,456.66. Debtors have not questioned this sum at all. Therefore, Creditor submits that total pre-petition arrearage claim in the amount of $7,841.33 is accurate and the Debtors objection should be overruled.

For the reasons set forth above Creditor submits that Debtors' objections to the total secured claim in the amount of $113,402.68 and the total pre-petition arrearage claim in the amount of $7,841.33 have no merit and the objections should be overruled.

Respectfully Submitted,

/s/ Phillip Barragate

_____
Shapiro, Van Ess, Phillips & Barragate, LLP
Phillip Barragate (00630147)
Matthew Murtland (0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (216-373-3116
Fax: (847) 627-8805
Email: pbarragate@logs.com
mmurtland@logs.com

# CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 21st day of April, 2020, a copy of the foregoing was served to the following:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

William C. Behrens, The Dann Law Firm Co., LPA, on behalf of Jeffrey Carman a/k/a Jeffrey S Carman and Glenda Carman, debtor(s), at billbehrens@dannlaw.com

Lauren A Helbling, on behalf of the Chapter 13 Trustee's office at lhelbling13@ecf.epiqsystems.com

United States Trustee at Registered address @usdoj.gov

And by regular U.S. mail, postage prepaid, on:

Jeffrey Carman a/k/a Jeffrey S Carman, 2113 Harrison Avenue, Lorain, OH 44055

Glenda Carman, 2113 Harrison Avenue, Lorain, OH 44055

/s/ Phillip Barragate
_____
Shapiro, Van Ess, Phillips & Barragate, LLP
Phillip Barragate (0063017)
Matthew Murtland (0088290)
4805 Montgomery Road, Suite 320
Norwood, OH 45212
Phone: (216) 373-3116
Fax: (847) 627-8805
Email: pbarragate@logs.com
mmurtland@logs.com



PHH Mortgage Services
P.O. Box 5452
Mt. Laurel, NJ 08054-5452

**Off-Scheduled Escrow Statement**
August 12, 2019



**EXHIBIT A**

Loan number: ▮▮▮▮

**Questions?**

Visit us at
www.MortgageQuestions.com
Call toll free 1-877-744-2506
Fax 1-856-917-8300

JEFFREY S CARMAN
C/O ZACHARY B. SIMONOFF
124 MIDDLE AVE STE 500
ELYRIA, OH 44035-5631

**Why am I getting this statement?**

In accordance with federal guidelines your escrow account is reviewed at least one time per year; however, certain circumstances may require an additional review. This statement is a result of that review known as an escrow analysis statement, which determines if sufficient funds are available to pay your taxes and/or insurance. This statement is a projection of your escrow account and may also include a history of the escrow activity on your loan since the time you last received an escrow analysis statement. The enclosed update follows notice of the account's involvement in a bankruptcy petition, filed on August 8, 2019 under chapter 13 of the Bankruptcy Code. This statement should be reviewed carefully. The mortgage payment may be affected. Please contact us at the number above if this account is not part of a Chapter 13 proceeding or plan. If this account has filed for any other Bankruptcy protection or received an Order of Discharge in a Chapter 7 bankruptcy case, or received any other discharge under the U.S. Bankruptcy Code that applied to the referenced property, please be advised that this Notice is for information purposes only and not intended as an attempt to collect a debt against you personally.

**What does this mean to me?**

Because your escrow account is projected to have more money than is needed, there is a surplus of **$2,751.53;** however, this surplus is being retained due to the status of your mortgage. Once your loan returns to a current status, please contact our Customer Service Department at the above referenced number to determine if the surplus is still valid.

**What is a surplus?**

A surplus is the difference between the **anticipated** escrow balance, which is greater than the **required** escrow balance at the beginning of the analysis cycle. A surplus typically results from changes in taxes and/or insurance. Please refer to the enclosed FAQ for additional information.

| | |
|---|---|
| **Anticipated** escrow account balance (as of August 31, 2019): | $4,208.19 |
| **Required** escrow account balance (as of August 31, 2019 ): | $1,456.66 |
| **Difference resulting in an escrow account surplus:** | **$2,751.53** |

See reverse ➔

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

Page 1 of 3

Borrower Name: JEFFREY S CARMAN
Loan Number: ▮▮▮▮

This space is intentionally left blank.

## What is my new monthly payment?

**Effective September 2019, your new monthly mortgage payment will be: $511.46**

|                     | **Current Payment** | **New Payment** |
|---------------------|---------------------|-----------------|
| Principal & Interest | $215.89             | $215.89         |
| Escrow Deposit      | $312.71             | $295.57         |
| **Total Payment**   | **$528.60**         | **$511.46**     |

*If your payment is issued by a third party, or if you make payments through a bill pay service, then please make sure your new total monthly payment amount is updated with your service provider.*

## Payment Change Breakdown

Below are the escrow items we anticipate collecting for and paying on your behalf over the next 12 months. To calculate your new monthly escrow payment of $295.57, we added up the actual or estimated tax and insurance payments for the next 12 months beginning with the September 2019 payment and divided the total by 12. Included for the comparison are the Annual Payments we projected to pay during the **last analysis cycle**, as displayed in detail in the history portion of the escrow analysis statement.

| **Description** | **Current Annual Payment** | **Projected Annual Payment** |
|-----------------|----------------------------|------------------------------|
| Taxes           | $2,459.34                  | $2,406.74                    |
| Insurance       | $1,140.00                  | $1,140.00                    |
| **TOTAL**       | **$3,599.34**              | **$3,546.74**                |

## Prior Year Account History and Coming Year Projections

**This statement itemizes your actual escrow account transactions since your previous analysis statement or initial disclosure and projects payments, disbursements and balances for the coming year.** The projections from your previous escrow analysis are included with the actual payments and disbursements for the prior year. By comparing the actual escrow payment with the previous projections listed, you can determine where a difference may have occurred. When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown. An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or date.

Projections are included to ensure sufficient funds are available to pay your taxes and/or insurance for the coming year. Under Federal Law (RESPA) the lowest monthly balance in your escrow account should be no less than $591.14 or 1/6th of the total annual projected disbursement from your escrow account, unless your mortgage documents or state law specifies otherwise.

Your projected anticipated lowest account balance of $3,342.67 will be reached in January 2020. When subtracted from your minimum required balance of $591.14, an Escrow Surplus results in the amount of $2,751.53. These amounts are indicated with **LP**. You will receive an Annual Escrow Account Disclosure Statement reflecting the actual disbursements at the end of the next escrow analysis cycle. However, you should keep this statement for your own records for comparison. If you have any questions about this statement, please call our Customer Service Department toll free at **1-877-744-2506**.

## ■ Escrow account projections for the coming year

| Date | Description | Anticipated amounts paid into your escrow account ($) | Anticipated amounts paid out of your escrow account ($) | Anticipated escrow account balance ($) | Required escrow account balance ($) |
|------|-------------|-------------------------------------------------------|---------------------------------------------------------|----------------------------------------|-------------------------------------|
|      | **Opening balance** |                                               |                                                         | 4,208.19                               | 1,456.66                            |
| Sep 2019 | HAZARD INS. | 295.57                                            | 1,140.00                                                | 3,363.76                               | 612.23                              |
| Oct 2019 |             | 295.57                                            |                                                         | 3,659.33                               | 907.80                              |

Continued on next page

**Change of name or address**
If your contact information has changed, please give us the new information below.

Name (first, middle, last)

Address (number and street)    Suite no.

City    State    Zip code

Home telephone    Business telephone    Extension
(    )    (    )

E-mail address

19-14906-jps    Doc 37    FILED 04/21/20    ENTERED 04/21/20 13:58:05    Page 7 of 20



PHH Mortgage Services
P.O. Box 5452
Mt. Laurel, NJ 08054-5452

## Off-Scheduled Escrow Statement (continued)
August 12, 2019

JEFFREY S CARMAN
C/O ZACHARY B. SIMONOFF
124 MIDDLE AVE STE 500
ELYRIA, OH 44035-5631

Loan number:

### Questions?
Visit us at
www.MortgageQuestions.com
Call toll free 1-877-744-2506
Fax 1-856-917-8300

### Escrow account projections for the coming year (continued)

| Date | Description | Anticipated amounts paid into your escrow account ($) | Anticipated amounts paid out of your escrow account ($) | Anticipated escrow account balance ($) | Required escrow account balance ($) |
|---|---|---|---|---|---|
| Nov 2019 | | 295.57 | | 3,954.90 | 1,203.37 |
| Dec 2019 | | 295.57 | | 4,250.47 | 1,498.94 |
| Jan 2020 | COUNTY TAX | 295.57 | 81.93 | 4,464.11 | 1,712.58 |
| Jan 2020 | COUNTY TAX | | 448.45 | 4,015.66 | 1,264.13 |
| Jan 2020 | COUNTY TAX | | 672.99 | 3,342.67 | 591.14 **LP** |
| Feb 2020 | | 295.57 | | 3,638.24 | 886.71 |
| Mar 2020 | | 295.57 | | 3,933.81 | 1,182.28 |
| Apr 2020 | | 295.57 | | 4,229.38 | 1,477.85 |
| May 2020 | | 295.57 | | 4,524.95 | 1,773.42 |
| Jun 2020 | COUNTY TAX | 295.57 | 81.93 | 4,738.59 | 1,987.06 |
| Jun 2020 | COUNTY TAX | | 448.45 | 4,290.14 | 1,538.61 |
| Jun 2020 | COUNTY TAX | | 672.99 | 3,617.15 | 865.62 |
| Jul 2020 | | 295.57 | | 3,912.72 | 1,161.19 |
| Aug 2020 | | 295.57 | | 4,208.29 | 1,456.76 |
| **Total** | | **$3,546.84** | **$3,546.74** | | |

**LP** - indicates your required escrow lowest balance

### Prior year account History

| | | Amounts paid into your escrow account | | Amounts paid out of your escrow account | | Anticipated ($) | Escrow account balance |
|---|---|---|---|---|---|---|---|
| Date | Description | Anticipated ($) | Actual ($) | Anticipated ($) | Actual ($) | | Actual ($) |
| | Opening balance | | | | | 4,511.74 | 437.94 |
| Jun 2019 | COUNTY TAX | 299.94 | * | 61.67 | * | 4,750.01 | 437.94 |
| Jun 2019 | COUNTY TAX | | | 469.71 | * | 4,280.30 | 437.94 |
| Jun 2019 | COUNTY TAX | | | 724.57 | * | 3,555.73 | 437.94 |
| Jun 2019 | COUNTY TAX | | | | 81.93* | 3,555.73 | 356.01 |
| Jun 2019 | COUNTY TAX | | | | 448.45* | 3,555.73 | -92.44 |
| Jun 2019 | COUNTY TAX | | | | 672.99* | 3,555.73 | -765.43 |
| Jul 2019 | | 299.94 | * | | | 3,855.67 | -765.43 |
| Aug 2019 | | 299.94 | 4,973.62 E | | E | 4,155.61 | 4,208.19 |
| Sep 2019 | HAZARD INS. | 299.94 | * | 1,140.00 | * | 3,315.55 | |
| Oct 2019 | | 299.94 | * | | | 3,615.49 | |
| Nov 2019 | | 299.94 | * | | | 3,915.43 | |
| Dec 2019 | | 299.94 | * | | | 4,215.37 | |
| Jan 2020 | COUNTY TAX | 299.94 | * | 448.46 | * | 4,066.85 | |
| Jan 2020 | COUNTY TAX | | | 673.00 | * | 3,393.85 | |
| Jan 2020 | COUNTY TAX | | | 81.93 | * | 3,311.92 | |
| Feb 2020 | | 299.94 | * | | | 3,611.86 | |
| Mar 2020 | | 299.94 | * | | | 3,911.80 | |
| Apr 2020 | | 299.94 | * | | | 4,211.74 | |
| May 2020 | | 299.94 | * | | | 4,511.68 | |
| **Total** | | **3,599.28** | **4,973.62** | **3,599.34** | **1,203.37** | | |



EXHIBIT B

Investor Loan ▮▮▮▮▮▮

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): Jeffrey S Carman

Lender/Servicer or Agent for Lender/Servicer ("Lender"): Ocwen Loan Servicing, LLC

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 02/28/2005

Loan Number: ▮▮▮▮▮▮▮▮

Property Address ("Property"): 2113 Harrison Ave Lorain, OH 44055-3419

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) The Mortgage on the Property, and (2) The Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same date as the Note, in the real property records of LORAIN County, OH. Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 2113 Harrison Ave Lorain, OH 44055-3419, which real property is more particularly described as follows.

Page 1

The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

**(Legal Description – Attached as Exhibit if Recording Agreement)**

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future

   B. I live in the Property as my principal residence, and the Property has not been condemned

   C. There has been no change in the ownership of the Property since I signed the Loan Documents

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents)

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct and

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so and

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan

   H. If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement

2. **Acknowledgments and Preconditions to Modification.** I understand and acknowledge that:

   A. Time is of the essence under this Agreement

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) The Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will
Page 2

automatically become modified on 08/01/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 08/01/2016.

A.  The new Maturity Date will be: 09/01/2035.

B.  **The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $109,264.19 (the "New Principal Balance"). The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance". I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.**

C.  $51,314.19 of the New Principal Balance shall be deferred ("Deferred Principal Balance") and I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $51,314.19 of the Deferred Principal Balance is eligible for forgiveness ("Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 05/01/2016, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $57,950.00.

**Interest at the rate of 3.25000% will begin to accrue on the Interest Bearing Principal Balance as of 07/01/2016 and the first new monthly payment on the Interest Bearing Principal will be due on 08/01/2016.**

My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - Maturity | 3.25000% | 07/01/2016 | $215.89 | $334.22, adjusts annually after year 1 | $550.11, adjusts annually after year 1 | 08/01/2016 | 230 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) Any time more than 30 calendar days after the Modification Effective Date, and (ii) Prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

    D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

    F. I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, if applicable, and any other amounts still owed under the Loan Documents by the earliest of: (i) The date I sell or transfer an interest in the Property, (ii) The date I pay the entire Interest Bearing Principal Balance, or (iii) The Maturity Date.

4. **Additional Agreements.** I agree to the following:

    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) A borrower or co-borrower is deceased; (ii) The borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce

Page 4

decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) The Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) Taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) Leasehold payments or ground rents on the Property, if any; (c) Premiums for any and all insurance required by Lender under the Loan Documents; (d) Mortgage insurance premiums in accordance with the Loan Documents; and (e) Any community association dues, fees, and assessments the Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its right under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) Sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) Not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in

writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, any provision in the Note, as amended for the assessment of a penalty for full or partial prepayment of the Note is null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title

Page 6

endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L.  That I will execute such other documents as may be reasonably necessary to either (i) Consummate the terms and conditions of this Agreement; or (ii) Correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M.  Mortgage Electronic Registration Systems, Inc. (MERS) is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In the cases where the loan has been registered with MERS who has only legal title to the interests granted by the Borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

N.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) The U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) Any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) Companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) Any HUD certified housing counselor.

O.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Page 7

## BORROWER ACKNOWLEDGEMENT

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

_6-24-2016_
Date

_/s/ Jeffrey S Carman_
Jeffrey S Carman

Page 8

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Jeffrey S Carman

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 02/28/2005

Loan Number:

Property Address: 2113 Harrison Ave Lorain, OH 44055-3419

THIS BALLOON PAYMENT DISCLOSURE is made this 03 day of Jun, 2016, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement ("Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of $17,104.73 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 08/01/2016 up to 05/01/2017 | $90,487.87 - NO ADJUSTMENT |
| 05/01/2017 up to 05/01/2018 | $73,383.14 |
| 05/01/2018 up to 05/01/2019 | $56,278.41 |
| 05/01/2019 up to 09/01/2035 | $39,173.68 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $39,173.68 WILL BE DUE AND PAYABLE IN FULL ON 09/01/2035, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 230 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

06/24/2016       *Jeffrey S Carman*
Date (MM/DD/YYYY)      Jeffrey S Carman

Page 11

## LENDER ACKNOWLEDGEMENT
### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Loan Servicing

_____
Authorized Officer

_____
Date

Page 12